First case this morning, City of Springfield v. Workers' Compensation Comm'n, 4-11-0469. Counsel, please. Yes, Your Honor. May it please the Court, Counsel, my name is Tom Ewick from Shea & Associates, and I represent the appellant in this matter, John Martin. I'm here today to ask that the appellate court reverse the decision of the circuit court, Judge John Schmidt, which reversed the finding of the Illinois Workers' Compensation Commission that John Martin's left wrist injury was related to the work accident of August 23, 2006. I would like to take a few minutes to begin with to go over some of the factual evidence which was presented at trial, containing the record as well as a little bit of the procedural history. John Martin filed an application for adjustment of claim alleging that on August 23, 2006, he sustained injuries to his left shoulder and left wrist. The evidence was that while working for the City of Springfield for CWLP, he was on the back of a digger truck when he lost his footing after slipping in some hydraulic oil. And as he was falling, he grabbed onto a handle. He said he put a death grip on the handle with his left arm in a hyper-extended position. He had to let go and he fell to the ground. He called his supervisor and then immediately presented that day to the emergency room of St. John's Hospital where the complaints were of pain to the left shoulder. The next day he presented to Dr. Western of Springfield Clinic who ordered an MRI of the left shoulder and issued some restrictions, specifically no lifting, pushing, pulling, or reaching overhead with the left arm. Following the MRI of his left shoulder, Mr. Martin started treating with Dr. Greeding who, incidentally, he was already treating with for other injuries which are not at issue here. Dr. Greeding is an orthopedic surgeon with Springfield Clinic. Dr. Greeding opined that the left shoulder was related to the work accident. The City doesn't dispute the left shoulder injury. Dr. Greeding ultimately, in February 2007, performs an arthroscopy followed a couple weeks later by an open procedure of the left shoulder. Following that operation, he issues an off-board slip and prescribes a shoulder immobilizer swing and takes Petitioner off-board. He also prescribes Petitioner to physical therapy. During the physical therapy, as the activities increased, Petitioner testified that he started noticing some discomfort in his left wrist, specifically while performing some push-ups. He began physical therapy on April 13, 2007. He returned to work in July 2007 for his left shoulder injury and his supervisor confirmed that when he did return to work, he started voicing complaints of some discomfort in his left wrist. He presented to Dr. Greeding on August 30, 2007, when at that time he started making complaints that his left wrist was bothering him. Dr. Greeding testified that based on the mechanism of injury, the employee here certainly could have injured his left wrist at the time of the accident. Dr. Greeding also testified that it was his understanding that the employee had pain in the left wrist since the day of the accident. Dr. Greeding orders an MRI after this visit of August 30, 2007, which does confirm a scapulonate ligament tear in the left wrist. Dr. Greeding testified on redirect examination that an MRI will show findings indicative of an acute injury, such as swelling, edema, inflammation, or bleeding. And the MRI here, which was 13 months after the accident, didn't show findings consistent with an acute injury, but the findings would be consistent with an injury occurring about a year prior. And so the commission was one commissioner dissenting, found in favor of the claim, correct? Yeah, the circuit court reversed. You won at the commission. We won at the commission. We won before the arbitrator. Won at the commission, one commissioner dissenting. Correct. Circuit court reversed the commission. Correct. Dr. Player, is there some aspects of his testimony that corroborates the claimant's case? I think there are. Dr. Player believes the petitioner sustained a degenerative tear of the left wrist. However, he also said this, he's never treated an individual 41 years or older, which is the petitioner's age, with a scapulonate degenerative condition. He also testified that while he did not believe the push-ups and physical therapy caused the tear here, he acknowledged a person could have a scapulonate ligament tear and be asymptomatic. And push-ups would place pressure on the scapulonate ligament and could cause it to become symptomatic. And he also said this, he said a substantial hyperflexion or hyperextension to the left wrist would be sufficient to cause a scapulonate ligament tear. And when you read the petitioner's testimony, and it's even confirmed by the medical records, he said that his wrist was hyperflexed when he grabbed onto the death grip to the hand. But you are correct about the procedural history here. The arbitrator, Stephen Mathis, did find a favor to the petitioner with respect to the left wrist and the left shoulder. The commission affirmed, which one commissioner dissented, but Judge Schmidt, the circuit court, reversed that. The circuit court found that the commission's finding that the left wrist was causally related to the work accident was against the manifest way of the evidence. This court should affirm the commission, because as it is well aware, a finding of the commission with respect to causal connection is useful. It is unique within the commission's province, and it will only be reversed if it is against the manifest way of the evidence. Meaning, only when an opposite conclusion is clearly apparent or no rational trier of fact could have agreed with the commission. And this is not the case where no rational trier of fact could have agreed with the commission. In fact, we have two commissioners, as well as the arbitrator, finding causal connection here. Let me point out first, and there are several things which support the commission's opinion. First, the accident and the mechanism of injury itself supports the commission's decision. The petitioner had a death grip on this handle when he testified his arm was in a hyperextended position. Even Dr. Player acknowledged a hyperflexion or hyperextension to the wrist, if suspicion enough, could cause an injury that we have here. The trauma from this accident was no light matter, certainly. We know that it caused a shoulder injury, a sufficient shoulder injury, which ultimately led to two shoulder surgeries. The city doesn't dispute the accident itself, and it doesn't dispute the shoulder injury. Let me point one thing out that I think is important here, too. It's brought out in counsel's brief, and it was argued before the circuit court, as well as to the commission, that the petitioner had no complaints of left wrist pain for nearly a year. But when one looks through the records, specifically the records of Dr. Greeding, on October 25, 2006, so two months and two days after the accident, Dr. Greeding noted that the claimant was complaining of some left elbow pain, but he also stated this, and I quote, he has pain with resisted wrist tenderness. This is two months after the accident, so there was some documentation, two months after the accident, of a left wrist injury. So why were there no complaints? There's a common sense and a very reasonable explanation for the lack of complaints for a year. His shoulder was immobilized. When he returned to work initially, the day after the accident, when he returned to work on restrictions, or he was issued restrictions, I should say, the day after the accident, when he returned to work, he worked basically light duty. He was a foreman. He did work which involved delegation. And his supervisor confirmed this, by the way. He does light duty work up through the shoulder surgeries, and after that, he's taken completely off the board. So his explanation that he experiences pain in his wrist when he starts doing strenuous activity or the push-ups, is reasonable, because the push-ups and physical therapy are the first evidence of any sufficient strenuous activity we have. We have no other mechanism of injury, no other history of trauma with the left wrist, other than this work accident. And we know he has a sufficient injury. That's confirmed by an MRI arthrogram, an objective test. The MRI showed, confirmed the ligament tear here. And Greeding explained that the findings of that MRI were consistent with an injury occurring a year later. In other words, there was nothing such as edema or bleeding or swelling or inflammation within the MRI, which would indicate an acute injury. Dr. Greeding also said something else that I think is important. He's the surgeon here, okay. He's the doctor that treated the petitioner, that knows the petitioner, that went in, opened up the wrist, and looked at it during the surgery. And he said that the surgical pathology was consistent with the petitioner's history, with his trauma that he sustained on August 23, 2006. I talk in my brief a little bit about Dr. Greeding versus a doctor-player. I don't want to belabor that point, except other than to point out that Dr. Greeding was the treating physician here. He was the one who operated. He was the one that saw the petitioner on several occasions. As opposed to Dr. Player, although I do think that there are some aspects of Dr. Player's testimony which support the petitioner's claim here. In conclusion, there is ample evidence in the record here to support the Commission's finding. This is not a case where the opposite result is clearly apparent, and this Court does not re-weigh the evidence. And for those reasons, as well as those stated in my brief, I would ask, if there are no questions from the bench, I would respectfully ask the Court, Your Honors, to reverse the Circuit Court and affirm that of the Commission. Thank you. Counsel, please. Thank you. May it please the Court, Counsel. My name is Dennis O'Brien, and I represent the City of Springfield in this case. Counsel is right. Reviewing courts should be hesitant to reverse cases on manifest weight. But they must do so on occasions where the evidence is clearly erroneous that the Commission is basing its opinion upon. And it's clearly evident in this case that if the Commission is wrong in finding, it should be reversed, and in this case it was and should be. And in fact, it takes some judicial courage on the part of the Circuit Court to reverse a case on manifest weight. You don't see a lot of them coming up here to you on a manifest weight reversal by the Circuit Court. But Judge Schmidt in this case was right in doing so. We start with the arbitrator's decision, which was nonsensical, even in regards to the left wrist. Even the Commission said it was nonsensical. They said his paragraph, finding causal connection, did not comport with the facts of the case. He said the man hurt his wrist in October of 2007 while doing push-ups. He had seen Dr. Greeding complaining of it in August of 2007. And he didn't give the push-ups history to the doctor at that point. So they said we can't go with that, and they certainly couldn't go with Dr. Greeding's opinion. Dr. Greeding's opinion was causal connection did exist if petitioner, after this accident, had pain in the wrist. And he said this petitioner did have pain in the wrist from the date of the accident onward. That was the history he had. When asked about it, he said, well, I know it's not in my notes. I should have been clearer in my notes on that history, but he told me he had pain in the wrist ever since the accident. The petitioner testified, I didn't tell him that, because, in fact, I didn't have pain in my wrist ever since the accident. He said pain came on in July of 2007. That would be 11 months after the accident. Well, let's talk about that for a second. I think that's obviously one of the things you are emphasizing and need to emphasize. Hey, look, if there was really a wrist injury, why did it take a moment a year before we heard any complaint? Absolutely. He's alleging, is it true that there was some surgical, the surgical pathology supports a causal connection to the accident of August 23rd? It doesn't pinpoint when it occurred. Is it consistent? It's consistent with something in August of 2006. It's consistent with something perhaps two years earlier. Consistent with something perhaps six months later. But he had no, absolutely no complaints in regards to his wrist. Not just the medical records are devoid of it. He testified he did not have any pain in his wrist. The counsel offers a plausible argument. He says, aha, conceding everything you say is 100% accurate, he didn't have any reason to put any pressure on or do any strenuous activity with the left wrist for almost a year because of the immobilization of the arm. And he didn't do anything, so he didn't realize that this was a problem until he attempted pushups sometime later. So what's your response to that? In March of 2007, he starts physical therapy. He starts doing exactly what you said, putting strenuous, strenuous pressure on the wrist. I don't know if you've ever had shoulder surgery. I have. And they talk about it. No, and I don't do a lot of pushups either. Me either, unfortunately. But they have this, they talk about these TheraBands that you pull on, et cetera. That puts pressure on the wrist. They started that in March. Nothing. April, May, June, July, nothing. 49 visits to the physical therapist. 49, not one word about the left wrist. Left shoulder, yes. Did they just fail to mention anything other than left shoulder? No. They mentioned his left elbow. He made complaints about his left elbow. Left wrist, nothing. Absolutely nothing. He sees the doctor the day before physical therapy ends, July 19, 2007. Does he have any left wrist complaints when he sees the doctor at the end of physical therapy, after he supposedly had these pushups, et cetera, that aren't in the physical therapy records? No. The commission, in their gobbled together excuse for a causal connection opinion, and it is exactly that. The paragraph after they rejected the arbitrators finding a causal connection, they said, but we'll find it on other grounds. They hobbled together a series of things that they said would prove that this was caused by it. They cited the death grip. Death grip was what caused it to yank the shoulder. But it didn't cause him to have pain. He testified to that. Not for a year. They cited his arm being immobilized for a period, as you did, despite the fact that he said he didn't have any left wrist complaints at all during that period of time. Also, they didn't tell you how long or when it was immobilized. They just said it was immobilized. He didn't have his surgery immediately. Well, what was Dr. Greening's opinion? Dr. Greening's opinion was if this man had pain from day one onwards, then the scaphate lunate tear was caused by the injury. But we know that he didn't have that pain. He testifies very clearly. Dr. Greening is wrong when he says I had pain from that day on. I did not. So his opinion is worthless. Well, it sounds like he's going to argue a very honest claim. Perhaps. He's not engaging in symptom magnification, is he? Or perhaps he's just facing the fact that the medical records totally would contradict him. He doesn't want to look like a totally dishonest claimant. I mean, those are the two opposing arguments on that. The commission cited his having to cease doing push-ups, but there's nothing in those 49 visits to the physical therapist that backs that up. And they talk about things that cause him to have increased pain, et cetera, in the shoulder and the elbow. And then they cited in their paragraph where they're trying to justify a causal connection opinion, they cited Petitioner complaining of left wrist extension during his July 19, 2007 visit with Dr. Greening. That's just fiction. That's make-believe. If you look at that doctor's note, it says pain with wrist extension. It doesn't say left wrist extension. And the records clearly indicate, and Dr. Greening said, I was also treating him for a right wrist injury. When you asked earlier about the complaint in regards to the wrist in, I believe it was July or maybe earlier, it was wrist. It didn't say left wrist. This man had a scatholunate tear in his right wrist also. And that was a work injury. And that one was paid. But he never, ever in his records indicated a left wrist problem until August 30, 2007, 40 days after he ceased physical therapy. And he'd seen him the day before physical therapy was over without any left wrist complaints. Did Greening and Player give some indication that those tears could be asymptomatic after they occurred? They did say it could be asymptomatic. It may have been asymptomatic for five years, Your Honor. We don't know. But it could be asymptomatic. But his causal connection was if he had immediate pain, then it would be causally connected. And he didn't have it. But he said, could it? But that would be speculation. There's no proof, no evidence whatsoever. They didn't do an x-ray of the wrist because he didn't have any complaints. They didn't do an MRI of the wrist because he had no complaints. Was the commission limited to the doctors on causation? No, but I believe they were limited to common sense. And I think that, and you're absolutely right. You know, I'm glad you brought that up. They are not limited to doctor opinions only. What's the exception to that? The chain of events. The chain of events causal connection can exist without a doctor's opinion. The chain of events is absolutely the opposite in this case. The chain of events, you have a person who is asymptomatic before the accident and has immediate complaints without a doctor's opinion. If you have those two things, an accident with immediate complaints, I fell and my shoulder hurt immediately. I went and got treated. You don't need a doctor's opinion. But in this case, we have an accident to the shoulder and no complaints. Not immediate, not a week later, not three weeks or three months later. It's a year and a week later that he makes his first complaint. That defeats the chain of events. Wouldn't it be a little more compelling if he didn't have a severe shoulder injury? You know, your argument to me would be much more compelling. If something happens on August 23rd, he has no complaints of anything for a year. But that isn't the case here, is it? Well, that would be compelling for finding no causal connection for the shoulder. Right. But this is compelling for the wrist. You don't have anything. And he's not saying it covered that. He did not testify that, oh, it was bad, but I only mentioned my shoulder because it was worse. That's not petitioner's testimony. Petitioner's testimony is I did not have left wrist pain after this accident. And maybe he didn't until he started to use it. He started using it in March when he went to physical therapy. We know that. And he used it in activities of daily living before then. What were the activities in the physical therapy? Was he doing push-ups then? I don't know when he started the push-ups. But remember, he's got scapho-lunate tears in both wrists. And he isn't complaining of it causing problems with his right wrist, apparently. And that was a known scapho-lunate before this accident. They were going to do surgery on that wrist before this accident. Yet the push-ups didn't cause that scapho-lunate tear to be terribly symptomatic. It didn't. So here we have one that's totally asymptomatic. Not already scheduled for surgery. And he would have you believe that the push-ups did that. The commission cited his testimony that it could be symptomatic, despite the fact that they earlier rejected his opinion in regards to causal connection because he didn't know the history. Despite the fact that he was contradicted by his own patient at the arbitration hearing, Dr. Greeding was just trying to help this man any way he could. Dr. Player, we were asked about his opinions. Dr. Player said he didn't think anything about this accident caused this man's left wrist scapho-lunate tear. He testified to that. Was it consistent? Yes. If he'd had complaints at that time, it would be consistent. But he didn't have complaints at that time. He didn't render an opinion of causal connection. As the dissenting commissioner pointed out, while the commission says that evidence clearly exists that the petitioner complained of pain while doing push-ups, that statement is totally false. There is nothing in the physical therapy records, 49 visits, nothing to support that. The evidence does not clearly show it exists. The medical evidence, which is not someone who has a vested interest for secondary gain, and people who are writing down what this man is complaining about, they don't put that in there. There's no medical evidence actually to support this man's claim. Nothing in the physical therapy records, nothing in Dr. Green's records. This decision is, as the dissenting commissioner pointed out, speculative at best. And we all know that you can't have a decision based upon speculation, conjecture, or guesswork. And that's what this is. They were gobbling together some facts, some true, some not, in an attempt to find a causal connection, and it's absolutely contradicted by the medical evidence. Again, the circuit court reviewed it. They did a nice job of reviewing it, and against the vast majority of cases it sees, they reversed it in a manifest way, and we would ask that that circuit court order be affirmed. Thank you. Thank you. With respect to the physical therapy records, there is a notation during a visit of July 16, 2007, where the physical therapist, who, by the way, were doing physical therapy for the shoulder, so that's going to be the focus of their notice and their treatment, but did state his chief complaint continues. He continues to be decreased grip strength. I believe that counsel was working with Dr. Green in his office note of October 25, 2006, a couple months after the accident. May have been referring to the right wrist, but I don't believe so at all in reading the record. I mean, Dr. Green states he has some chronic lateral left elbow pain. He then performs an examination on his tender over the left lateral epicondyle, and then he states he has pain with resisted wrist extension. Dr. Player did state that the petitioner here exhibited no signs of symptom magnification. The petitioner was credible here. He had every opportunity he could have said, I guess I should say, that his pain started in the beginning, but he just didn't report it to the doctors. But he didn't state that. He said his pain didn't start until he was doing push-ups and physical therapy. And if it's just a case where the petitioner is only saying he didn't have pain since the beginning because it's refuted by the records, that's not necessarily the case, because what he testified to was he noticed it during the push-ups and physical therapy, but counsel on the other hand argues that wasn't reported in the physical therapy records. The fact is... Was it or wasn't it? It wasn't, was it? It was not reported in the physical therapy records that he had pain while doing push-ups. That was his testimony. But my point is simply he's an honest person and credible. He has no signs of symptom magnification. And if he was merely saying that his pain didn't begin until then, he would have, I would think, taken it one step further and said he had pain since the accident. But he didn't do that. He was honest. He said his pain began when he got into his strenuous activity or the push-ups during physical therapy. If a claimant's injured during physical therapy required by a clear-weighted industrial accident prevention, are those damages compensable? I think they would be. And I think there's case law that held that, although I can't cite any off the top of my head. I do think here, and it's our position, is that the tear was there. It just wasn't symptomatic. When we talk about the chain of events, the chain of events here doesn't necessarily refute the fact that he had an injury on this day. I mean, before this accident, the fact is, he was informed of the community's testimony. He was also doing pretty physical labor work, using the post-hole diggers and those types of tools. And he wasn't complaining of pain there, as far as we know. I mean, his supervisor came to testify, and didn't testify about any previous complaints of left wrist pain. Complaints here started after the accident. And the MRI confirmed that it wasn't an acute injury when the MRI was performed 13 months later. I would respectfully request this court affirm the defining of the commission. Thank you. The court will take the matter under advisement for disposition.